NOLL, Appellant,

v.

NEZBETH et al., Appellees.

[Cite as *Noll v. Nezbeth* (1989), 63 Ohio App.3d 46.]

Court of Appeals of Ohio,
Portage County.

No. 1940.

Decided May 22, 1989.

*John D. Frisby, Jr.* and *Taryn L. Heath,* for appellant.

*David W. Leopold* and *Hilary S. Taylor,* for appellees.

---

FORD, Judge.

On or about June 26, 1985, defendant Rachel Lantz was driving her automobile eastbound on Tallmadge Road in Portage County, Ohio, when a southbound automobile driven by defendant Richard J. Nezbeth, Jr. failed to yield at a stop sign. Nezbeth's automobile entered the intersection and was struck broadside by Lantz's automobile. The stop sign designed to stop southbound traffic was not in its normal upright position, but was partially down. Plaintiff-appellant Patricia Noll was a passenger in Nezbeth's automobile.

In a separate action, Rachel Lantz and her husband Aubrey filed a complaint in the Portage County Court of Common Pleas against Nezbeth, Portage County and its commissioners, and the county engineer on August 29, 1985. On April 21, 1986, Portage County, its commissioners, and its engineer filed a motion for summary judgment against Rachel and Aubrey Lantz.

In the case at bar, appellant Patricia Noll filed a complaint against Nezbeth, Portage County and its commissioners, the county engineer, and Rachel Lantz on April 23, 1986 in the same court.

On May 12, 1986, Nezbeth moved the trial court to consolidate the two actions. Noll stipulated to a consolidation on May 30.

Portage County, its commissioners and its engineer filed a second motion for summary judgment on June 16, 1986, which was granted on July 17. The first motion for summary judgment was filed against the Lantzes two days before appellant Noll filed her complaint; therefore, that motion did not relate to her.

On March 13, 1987, Noll filed a motion for reconsideration of the granting of summary judgment. This motion was denied on April 23, 1987.

In a judgment order of December 22, 1987, appellant agreed to dismiss Nezbeth and Lantz from the action, with prejudice, reserving the right to proceed with an appeal against appellees Portage County, its commissioners, and its engineer. Appellant raises one assignment of error upon appeal:

"The Trial Court Erred In Granting Appellees' Motion For Summary Judgment Based Upon Its Finding That There Was No Legal Duty By Appellees To Appellant, There Being No Actual Notice Or Constructive Notice To Appellees Of a Negligent Condition Which Posed a Danger To Appellant."

■ We will first address the issue of the liability of the county engineer. In *Royce v. Smith* (1981), 68 Ohio St.2d 106, 22 O.O.3d 332, 429 N.E.2d 134, the appellant was involved in an automobile accident in Stark County when another person failed to yield at a stop sign and struck appellant's automobile. One of the defendants named in the lawsuit was the county engineer.

The Supreme Court held that since a county engineer has no power to establish police regulations, he is not a "local authority" within the meaning of R.C. 4511.01(AA) and therefore would not be liable for placing and maintaining traffic control devices such as stop signs. The Supreme Court affirmed the Civ.R. 12(B)(6) dismissal of the county engineer in *Royce, supra.*

We find the rationale of *Royce* as it pertains to county engineers to be convincing and hold that the granting of summary judgment in favor of the county engineer was proper.

■ Whether summary judgment was properly granted in favor of the remaining appellees, *i.e.*, Portage County and its commissioners, depends upon whether or not a legal duty existed to repair the stop sign.

In *Zents v. Bd. of Commrs.* (1984), 9 Ohio St.3d 204, 9 OBR 516, 459 N.E.2d 881, the Supreme Court held that:

"No tort action will lie against a county for those acts or omissions involving the exercise of an executive or planning function or involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, a county will be held liable, the same as private corporations and persons, for the negligence of its employees and agents in the performance of their activities." *Id.* at syllabus.

*Zents, supra,* summarized its holding by stating: "Simply put, counties are, by this decision, subject to the same rules as private persons or corporations if a duty has been violated and a tort has been committed." *Id.* at 207, 9 OBR at 519, 459 N.E.2d at 885.

R.C. 305.12 is the relevant statutory provision with respect to the liability of county commissioners. At the time of the accident, R.C. 305.12 provided in relevant part that: " * * * The board shall be liable, in its official capacity, for damages received by reason of its negligence or carelessness in not keeping any such road or bridge in proper repair * * *."

In *Heckert v. Patrick* (1984), 15 Ohio St.3d 402, 15 OBR 516, 473 N.E.2d 1204, the appellants brought a suit against the Stark County Board of Commissioners and a private landowner when a tree limb from the landowner's property fell into the immediate path of the appellants as they were traveling on the roadway.

The Supreme Court relied upon its previous decision of *Zents* for the proposition that counties are subject to the same rules as private persons under common-law tort principles. The *Heckert* court then stated that it must therefore address the issue of the commissioners' liability in light of both common-law tort standards and any existing duty imposed by statute.

*Heckert* stated:

"*A review of case law decided under R.C. 305.12 and its predecessor, G.C. 2408, reveals two recognized principles. First, the intent of the General Assembly was to place a duty on the commissioners only in matters concerning either the deterioration or disassembly of county roads and bridges.* * * * Second, liability will not be imposed under the purview of the statute when the obstructions or interferences are unrelated to the conditions of the roadway. * * *

"While it is clear that the commissioners do not have a statutory duty pursuant to R.C. 305.12 to trim or remove tree limbs which overhang a county road, appellants focus attention on cases decided under R.C. 723.01 in an effort to place liability on the commissioners. These cases, however, are not applicable here. *R.C. 723.01 contains the language 'and free from nui-*

*sance,' which has been interpreted by this court to include more than just conditions of the roadway. The failure of the General Assembly to place this language in R.C. 305.12 clearly indicates its intention not to impose liability on the commissioners in matters unrelated to actual roadway conditions."* (Citations omitted and emphasis added.) *Id.* at 406–407, 15 OBR at 520, 473 N.E.2d at 1208–1209.

This limitation of R.C. 305.12 was followed by the Supreme Court again in *Ruwe v. Bd. of Cty. Commrs. of Hamilton Cty.* (1986), 21 Ohio St.3d 80, 21 OBR 377, 488 N.E.2d 157.

It is clear that under the rationale of *Zents, Heckert, Ruwe, supra,* and our decision in *Applegate v. Duncanside Park* (1986), 28 Ohio App.3d 88, 28 OBR 130, 502 N.E.2d 249, a board of county commissioners has no *statutory* duty to maintain a stop sign.

In *Applegate, supra,* we stated:

"Liability for tortious conduct is premised upon the existence of an express duty, albeit common law or statutory, owed by the defendant to the plaintiff. *Strunk* [*v. Dayton Power & Light Co.* (1983)], *supra* [6 Ohio St.3d 429] at 431 [453 N.E.2d 604, 606]. Counties, as creatures of statute, possess only those powers and duties imposed upon them by statute. 52 Ohio Jurisprudence 3d (1984) 122, Government Tort Liability, Section 25. In the instant action, appellants have not demonstrated the existence of any statutory duty on the part of appellee to trim weeds growing in the median strip of a county highway. In the absence of such duty, appellants cannot recover against appellee even though sovereign immunity no longer remains as a defense." *Id.* at 90, 28 OBR at 132–133, 502 N.E.2d at 252.

Thus, based upon the holdings of *Heckert* and *Ruwe,* we hold that the board of commissioners had no statutory duty to repair the stop sign. Appellant maintains, however, that the commissioners nevertheless voluntarily assumed a duty to repair the stop sign.

The Supreme Court stated in *Ruwe:*

"Our second concern is whether a duty exists under the common law that would provide a source for [the board of county commissioners'] liability. A majority of this court indicated in *Zents v. Bd. of Commrs.* (1984), 9 Ohio St.3d 204 [9 OBR 516, 459 N.E.2d 881], syllabus, that ' * * * once the decision has been made [by a county] to engage in a certain activity or function, a county will be held liable, the same as private corporations and persons, for the negligence of its employees and agents in the performance of their activities.' It is thus necessary for plaintiffs seeking redress against a governmental entity to establish the requisite elements of the alleged tortious

conduct. This includes the existence of a legal duty. *The critical element for our determination is whether the county had a duty, or voluntarily assumed a duty, to keep the highways free from a nuisance.* To this end appellees suggest that R.C. 723.01, which imposes a duty on *municipal corporations* to keep roads 'open, in repair and free from nuisance,' should also apply to counties. In *Heckert* we once again expressly declined to adopt such an expansive view and we *reaffirm* our position today. *Id.* [15 Ohio St.3d] at 407 [15 OBR at 520, 473 N.E.2d at 1209]. * * * *Moreover, no evidence was presented to suggest that* [the board of county commissioners], *or their agents, undertook to engage in any kind of activity that would create a duty on their part for the benefit of appellees."* (Citations omitted and emphasis added.) 21 Ohio St.3d at 82–83, 21 OBR at 379, 488 N.E.2d at 159.

From the emphasized portion of the above quotation, the Supreme Court indicates that, based upon the holding of *Zents*, and notwithstanding the absence of any *statutory* duty, a board of county commissioners *could* engage in an activity which would amount to a voluntary assumption of a duty to keep the roads free from a nuisance.

In the case at bar, the motion for summary judgment was supported by an affidavit of the county engineer. The affidavit stated that the affiant checked the county records to determine whether the county had received any notice of a fallen stop sign. He stated that these records would indicate whether such notice was given to the county, and that the records showed that no report of a fallen stop sign had been entered in the records. The affidavit also stated that "stop signs receive top priority in Portage County and if a call had been received we would have promptly fixed this or any stop sign."

This affidavit, however, cannot be imputed to the board of county commissioners. Therefore, with respect to the board of county commissioners, there is nothing to indicate any voluntary assumption of a duty not imposed by statute. The affidavit, while having the effect of conceding that a duty was voluntarily assumed, was the product of the county engineer, who we held was not liable as a matter of law.

Even if we were to impute the engineer's affidavit to the commissioners and state that they voluntarily assumed a duty to repair stop signs, the granting of summary judgment would still have been proper because the affidavit stated that there was no notice of a fallen stop sign at the intersection involved here at the pivotal time in question.

It is well-settled that summary judgment should be used cautiously so as not to usurp a litigant's right to a trial. *Viock v. Stowe–Woodward Co.*

(1983), 13 Ohio App.3d 7, 13 OBR 8, 467 N.E.2d 1378. The purpose of such an endeavor is not to try issues of fact, but rather to determine whether triable issues of fact exist. *Viock, supra.* This court has summarized a court's role in a summary judgment exercise as follows:

"It is well established that summary judgment is to be used cautiously, *Viock v. Stowe-Woodward Co.* (1983), 13 Ohio App.3d 7 [13 OBR 8, 467 N.E.2d 1378], and is to be granted only when the court is convinced that there are no genuine issues of material fact in dispute; that the moving party is entitled to judgment as a matter of law; and that, construing the evidence most strongly in favor of the nonmoving party, reasonable minds could come to but one conclusion and that conclusion is in favor of the moving party. *Petrey v. Simon* (1984), 19 Ohio App.3d 285 [19 OBR 456, 484 N.E.2d 257]. Thus, if any genuine issues of material fact are in dispute, summary judgment must be denied." *Lewkowski v. Goodwin* (Oct. 3, 1988), Lake App. No. 13–097, unreported, 1988 WL 102615. See, also, *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904.

The assignment of error is without merit.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and MAHONEY, J., concur.